ORDERED.

**Dated:  March 01, 2022**



Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                        Case No. 8:20-bk-01122-MGW
                                                                 Chapter 13

Martha Irene Weed,

     Debtor.

_____/

## MEMORANDUM OPINION
## ON HOMESTEAD EXEMPTION

There is no dispute that, for nearly twenty years, the Debtor has lived on the same property—roughly 75 acres of land located outside a municipality—and that she intends to reside there permanently. But for most of those of those twenty years, the Debtor has used all but a couple acres of land for farming. This Court must decide whether the Debtor's use of her property for farming defeats the homestead exemption. Because the Florida Constitution exempts up to 160 acres of land outside a municipality without regard to the use made of the property not covered by a residence, the Debtor's property is exempt homestead.

Case 8:20-bk-01122-MGW    Doc 145    Filed 03/01/22    Page 2 of 16

## I.    Undisputed Facts

For nearly twenty years, the Debtor has lived on a 74.8-acre parcel of land located outside the Brooksville, Florida city limits.[1] It's the only place the Debtor has lived during that time;[2] all her personal belongings are located there;[3] she receives her mail there;[4] she uses the property address for her driver's license;[5] she attends church and does her grocery shopping nearby;[6] her tax returns show the property as her primary address;[7] and the property, which the Debtor owns, has been registered as her homestead with Hernando County since 2003.[8]

On those facts, this would ordinarily be an easy—if not a slam dunk—case for the homestead exemption. But there is a wrinkle: for most of the time the Debtor has lived at the property, she used all but a couple acres for "farming" operations.[9]

---

[1] *Affidavit of Martha Irene Weed*, Doc. No. 105-1, ¶¶ 2 & 8.

[2] *Id.* at ¶ 8.

[3] *Id.* at ¶ 11.

[4] *Id.* at ¶ 12.

[5] *Id.* at ¶ 13.

[6] *Id.* at ¶¶ 14 & 15.

[7] *Id.* at ¶ 16.

[8] *Id.* at ¶ 9.

[9] *Deposition of Martha Irene Weed*, Doc. No. 118, Ex. G., p. 111, ll. 15 – 19.

Those farming operations, which consisted mostly of cattle, horses, and haying, began sometime in the early 2000s.[10] Between 2010 and 2018, the Debtor claimed farming losses each year—ranging anywhere from $46,000 to $87,000.[11] In 2018, the Debtor ended her farming operations.[12]

Along the way, the Debtor twice pledged her property as collateral for loans.[13] In both instances, the mortgages, which were entered into nearly twenty years ago, stated that the property was not the Debtor's homestead.[14] And, over the years, the Debtor has deducted her mortgage interest (as well as her homeowners' insurance premiums) as farming expenses on her tax returns.[15] Although the Debtor has stopped her farming operations, she allows a third party—Carnes Batten—to use her property for cattle farming.[16]

It is the Debtor's (and Mr. Batten's) use of her property for farming operations that lies at the heart of this dispute over the homestead exemption.

---

[10] *Weed Dep.*, Doc. No. 118, Ex. G., p. 140, ll. 9 – 12.

[11] *Law Offices of Lynwood Arnold, P.A.'s Resp. in Opp. to Debtor's Mot. for Partial Summ. J.*, Doc. No. 118, ¶ 36.

[12] *Weed Dep.*, Doc. No. 118, Ex. G., p. 111, ll. 20 – 22.

[13] *Arnold Resp.*, Doc. No. 118, ¶¶ 22 – 24, Exs. A – C.

[14] *Id.*

[15] *Weed Dep.*, Doc. No. 118, Ex. G., p. 157, ll. 3 – 12.

[16] *Deposition of Carnes Batten*, Doc. No. 118, Ex. F, p. 77, ll. 10 – 25.

In February 2020, the Debtor filed for chapter 13 bankruptcy.[17] After filing for bankruptcy, the Debtor claimed the property as exempt homestead[18] and sought to avoid a judgment lien against the property because it is impairing her homestead exemption.[19] The Debtor now asks the Court to determine—as a matter of law—that the property is her homestead and therefore exempt.[20]

## II.    Conclusions of Law

The Law Offices of Lynwood Arnold, P.A., which holds the judgment lien the Debtor seeks to avoid, objects for two reasons.[21] First, the Arnold law firm contends there are factual issues that preclude this Court from determining that the property is the Debtor's homestead as a matter of law. Second, putting aside those (alleged) factual disputes, the Arnold law firm contends—relying on *In re Nofsinger* and *In re Radtke*—that the homestead exemption extends to only that portion of property that the Debtor uses for her residence and that the Debtor cannot claim the homestead

---

[17] Doc. No. 1.

[18] Doc. Nos. 14 & 15. Technically, the Debtor did not claim the property, which she scheduled as being worth $207,000, as exempt in her initial schedules. Doc. No. 1, Schedules A/B & C. Three weeks after filing for bankruptcy, though, the Debtor amended her schedules to increase the value of the property to $1 million and to claim it as exempt homestead. Doc. Nos. 14 & 15.

[19] *Verified Mot. to Avoid Judicial Lien of Law Office of Lynwood Arnold, P.A.*, Doc. No. 38.

[20] *Debtor's Verified Mot. for Partial Summ. J.*, Doc. No. 105, ¶¶ 28 – 37 (citing *In re Alexander*, 346 B.R. 546 (Bankr. M.D. Fla. 2006)).

[21] *Resp. in Opp'n to Verified Mot. to Avoid Judicial Lien of Law Office of Lynwood Arnold, P.A.*, Doc. No. 39; *Obj. to Debtor's Claim of Exemptions*, Doc. No. 42.

exemption for the portion of property being used for commercial purposes.[22] Neither argument has merit.

### A.    No factual issues preclude summary judgment.

For property to be a debtor's homestead—and therefore exempt—the debtor must (1) actually reside at the property; and (2) intend to make the property her permanent residence.[23] Here, it is undisputed that the only place the Debtor has lived during the last twenty years is at the property;[24] all the Debtor's personal belongings are located at the property;[25] the Debtor receives her mail at the property;[26] the Debtor uses the property address for her driver's license;[27] the Debtor attends church and does her grocery shopping nearby;[28] the Debtor's tax returns show the property as her primary address;[29] and the property has been registered as her homestead with Hernando County since 2003.[30]

---

[22] *Arnold Resp.*, Doc. No. 118, ¶¶ 45 – 46 (citing *In re Nofsinger*, 221 B.R. 1018 (Bankr. S.D. Fla. 1998); *In re Radtke*, 344 B.R. 690 (Bankr. S.D. Fla. 2006)).

[23] *In re Mangieri*, 2021 WL 1747422, *4 (Bankr. M.D. Fla. May 3, 2021) (explaining that the two threshold requirements to establish a debtor's homestead under the Florida Constitution are an intent to reside at the property permanently and actual residence at the property).

[24] *Weed Aff.*, Doc. No. 105-1 at ¶ 8.

[25] *Id.* at ¶ 11.

[26] *Id.* at ¶ 12.

[27] *Id.* at ¶ 13.

[28] *Id.* at ¶¶ 14 & 15.

[29] *Id.* at ¶ 16.

[30] *Id.* at ¶ 9.

Even so, the Arnold law firm claims two factual disputes preclude summary judgment. First, the Arnold law firm points out an apparent discrepancy regarding when the Debtor acquired ownership of the property: in an affidavit, the Debtor claims she bought the property in 1997; but the exhibit the Debtor cites in support of that claim is a February 5, 2003 quitclaim deed conveying her interest in the property to herself and George Dumstorf as joint tenants with a right of survivorship.[31] Second, the Arnold law firm points to a notice of sheriff's levy on personal property (a double-wide mobile home on the Debtor's property) from nearly a decade ago and asks how the sheriff could be levying personal property if the Debtor's real property is exempt homestead. The Court is not convinced there are disputed issues of fact— let alone ones that would defeat summary judgment.

Let's start with the apparent discrepancy regarding when the Debtor acquired title to the property. It's true, as the Arnold law firm points out, that the quitclaim deed attached to the Debtor's summary judgment motion does not support the Debtor's claim that she bought the property in 1997; but nor does it contradict the Debtor's claim either. After all, the Debtor could not have quitclaimed an interest in the property to Dumstorf in 2003 unless she had acquired an interest in the property sometime before then. In any case, the quitclaim deed establishes, at a minimum, that the Debtor has owned the real property since at least 2003.

---

[31] *Id.* at ¶ 7; *Debtor's Verified Mot. for Partial Summ. J.*, Doc. No. 105, Ex. C.

Now let's turn to the sheriff's levy directed to the mobile home on the Debtor's property. According to the Arnold law firm, the sheriff could not have levied on the mobile home if the mobile home were part of the Debtor's homestead:

> How could that have occurred if it was the Debtor's homestead? I know enough about sheriffs to know that if they were to have noticed that it was homestead, they would not have attempted to levy, or they would not have been able to obtain the levy.[32]

That argument would be more compelling—and potentially raise a disputed issue of material fact—if the levy had been directed to the Debtor's property.

But, here, the levy was directed to George Dumstorf's interest in the mobile home.[33] And it appears from the release of the sheriff's levy that the Debtor took title to the mobile home at a January 2013 sheriff's sale by credit bidding a judgment against Dumstorf.[34]

Let's assume that a trier of fact considered these two supposed issues of fact and determined them in favor of the Arnold law firm. Where would that leave us? It would mean that the Debtor did not acquire ownership of the real property until 2003 and that she did not acquire ownership of the mobile home located on the property until she took title to it at the January 2013 sheriff's sale. Because it is undisputed that the property has been the Debtor's only residence during the last

---

[32] *November 8, 2021 Summary Judgment Hearing Transcript*, Doc. No. 128, p. 13, l. 23 – p. 14, l. 10.

[33] *Arnold Resp.*, Doc. No. 118, Ex. D.

[34] *Id.* at Ex. E.

twenty years—not to mention that she has all her belongings there, receives her mail there, etc.—changing when she acquired ownership of the real property and the mobile home from 2003 to even as recent as 2013 would not defeat (or in any way limit) the Debtor's homestead exemption. Put another way, the factual issues the Arnold law firm raises will not affect the outcome of its objection to the Debtor's homestead exemption.

Under Rule 56, only disputed issues of *material* fact will defeat summary judgment.[35] A factual issue is material if it might affect the outcome of a dispute.[36] "Factual disputes that are irrelevant or unnecessary will not be counted."[37] Because the factual issues the Arnold law firm raises will not affect the outcome of its objection to the Debtor's homestead exemption, those factual issues are irrelevant or unnecessary and therefore will not defeat summary judgment.

### B. The Debtor's use of her property for farming does not defeat the homestead exemption.

Article X, section 4 of the Florida Constitution provides a homestead exemption for property located within a municipality, as well as for property located

---

[35] Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law.") (emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[36] *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[37] *Id.*

outside a municipality.[38] Although the homestead exemption for property located

*within a municipality* is limited to the residence of the owner or owner's family, article

X, section 4 imposes no such limitation for property located *outside a municipality*:

> There shall be exempt from forced sale under process of
> any court, and no judgment, decree or execution shall be a
> lien thereon . . . the following property owned by a natural
> person:
>
> a homestead, if located outside a municipality, to the
> extent of one hundred sixty acres of contiguous land and
> improvements thereon . . .; *or if located within a municipality,*
> *to the extent of one-half acre of contiguous land, upon which the*
> *exemption shall be limited to the residence of the owner or the*
> *owner's family . . . .*[39]

Even though article X, section 4 doesn't limit the homestead exemption for property

outside a municipality to the residence of the owner or the owner's family, the

Arnold law firm nonetheless argues that the Debtor's use of her property for farming

defeats the homestead exemption.[40]

Not so.

Whether the Debtor's use of her property for farming operations defeats the

homestead exemption is an issue of state law.[41] In determining issues of state law,

this Court's objective is simple: the Court must determine how the Florida Supreme

---

[38] Art. X, § 4, Fla. Const.

[39] Art. X, § 4(a)(1), Fla. Const. (emphasis added).

[40] *Arnold Resp.*, Doc. No. 118, ¶ 44.

[41] *Menotte v. Baez*, 2018 WL 2276068, at *2 (S.D. Fla. May 18, 2018) ("The proper interpretation of the Florida Constitution is a matter of state law.").

Court would resolve the issue.[42] The starting point, of course, is decisions by the

Florida Supreme Court.[43] If the Florida Supreme Court has not decided an issue, this

Court looks to decisions by Florida's intermediate appellate courts.[44]

 Here, neither party has cited a decision by the Florida Supreme Court. Nor is

the Court aware of one directly on point. But one Florida intermediate appellate

court—Florida's First District Court of Appeal—decided this issue in *Davis v. Davis*.[45]

 In that case, Davis owned fewer than 160 acres of land outside a municipality.

Davis' residence was on the property, as was a mobile home park that generated

rental income.[46] The *Davis* court had to decide whether the homestead exemption

extended to the part of the property that Davis used to operate a mobile home park.[47]

For two reasons, the *Davis* court decided that the homestead exemption did extend to

the entire property—including the portion of the property used for a mobile home

park generating rental income.

---

[42] *GuideOne Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) ("Our objective is to determine issues of state law as we believe the Florida Supreme Court would . . . .").

[43] *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) ("Where the highest court—in this case, the Florida Supreme Court—has spoken on the topic, we follow its rule.")

[44] *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009).

[45] 864 So. 2d 458, 458 – 59 (Fla. 1st DCA 2003).

[46] *Id.*

[47] *Id.*

First, Florida courts have historically declined to limit the homestead exemption for property located outside a municipality. The *Davis* court began by noting that "[l]anguage similar to that found in article X, section 4 of the current constitution has appeared in Florida constitutions for well over a century"—dating all the way back to the 1868 and 1885 constitutions.[48] Although that language limited homesteads within a municipality to the "residence and business house of the owner," the Florida Supreme Court consistently declined to extend that limitation to homesteads located outside a municipality.[49]

Second, the grammatical structure of the current version of article X, section 4 makes clear that the language limiting the homestead exemption to "the residence of the owner or the owner's family" applies only to property within a municipality.[50] As the *Davis* court noted, article X, section 4 consists of two clauses: one setting forth the homestead exemption for property located outside a municipality; the other setting forth the homestead exemption for property located within a municipality. The two clauses are separated by a semi-colon, with the language limiting the homestead exemption to the "residence of the owner or the owner's family" coming at the end

---

[48] *Id.* at 459.

[49] *Id.* at 459 – 60.

[50] *Id.* at 460.

of the second clause, which sets forth the homestead exemption for property within a municipality.[51]

Given historical precedent and the plain language of article X, section 4, the *Davis* court held that the homestead exemption for property located outside a municipality is not limited to the residence of the owner or the owner's family:

> Giving article X, section 4 a plain reading, and also a reading consistent with decisional law under prior constitutions, we hold that the language limiting homesteads within municipalities to the residence of the owner or the owner's family does not apply to homesteads located outside municipalities.[52]

"[U]nless there is persuasive evidence that the highest state court would rule otherwise," this Court is bound by *Davis*.[53]

The Arnold law firm has offered no persuasive evidence that the Florida Supreme Court would rule contrary to *Davis*. The Arnold law firm primarily relies on two cases—*In re Nofsinger* and *In re Radtke*—for the proposition that the homestead exemption does not extend to the portion of property used for commercial purposes.[54] The Court does not find either *Nofsinger* or *Radtke* persuasive.

---

[51] *Id.*

[52] *Id.*

[53] *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009) (quoting *King v. Order of United Com. Travelers of Am.*, 333 U.S. 153, 158 (1948)).

[54] *Arnold Resp.*, Doc. No. 118, ¶¶ 45 & 46 (discussing *In re Nofsinger*, 221 B.R. 1018 (Bankr. S.D. Fla. 1998); *In re Radtke*, 344 B.R. 690 (Bankr. S.D Fla. 2006)).

To begin, *Nofsinger* pre-dates *Davis*. What's more, even though federal courts should look first to decisions of Florida's highest and intermediate appellate courts when deciding issues of state law, of the twenty or so homestead cases cited by the *Nofsinger* and *Radtke* courts, only four cases were from Florida state courts.[55] And none of those four cases—one of which was *Davis*—limited the homestead exemption to only the debtor's residence.[56] Finally, while the *Radtke* court did discuss *Davis,* it waved away that decision—the only intermediate appellate court to address the issue before the court—as merely "persuasive" and declined to follow it because, in the *Radtke* court's view, "the language contained in the Florida Constitution was not intended to extend homestead protection to those portions of property which its owner utilizes for commercial enterprise."[57]

This Court disagrees that, for property outside a municipality, the language of the Florida Constitution limits the homestead exemption in any way (other than to

---

[55] *In re Nofsinger*, 221 B.R. at 1020 – 21 (citing *Cowdery v. Herring*, 143 So. 433 (Fla. 1932); *Fort v. Rigdon*, 129 So. 847 (Fla. 1930)); *In re Radtke*, 344 B.R. at 693 – 94 (citing *Davis v. Davis*, 864 So. 2d 458 (Fla. 1st DCA 2003); *Buckels v. Tomer*, 78 So. 2d 861 (Fla. 1955)).

[56] *Buckels*, 78 So. 2d at 865 (rejecting contention that subdivided lots that were never used for homestead purposes but were instead only held for speculation or resale could not acquire homestead status because 1885 Florida Constitution exempted 160 acres of land outside a municipality "without regard to the use that may be made of that portion of the tract not covered by the residence and enclosures") (quoting *McDougall v. Meginniss*, 21 Fla. 362, 373 (Fla. 1885)); *Cowdery*, 143 So. at 435 (holding that paint shop and garage built on homestead property were exempt from execution under 1885 constitution); *Fort*, 129 So. at 848 (holding that the 1885 Florida Constitution exempts 160 acres of land outside a municipality "without regard to the use that may be made of that portion of tract not covered by the residence and enclosures" and that the "Constitution does not prescribe the manner in which the tract shall be *used* beyond residing thereon") (quoting *McDougall*, 21 Fla. at 373); *Davis*, 864 So. 2d at 460.

[57] *Radtke*, 344 B.R. at 693 – 94.

160 acres of land). The only limiting language in article X, section 4—limiting the homestead to the "residence of the owner or the owner's family"—is in the clause dealing with property *within a municipality*.[58] That clause is separated from the clause dealing with property *outside a municipality* by a semicolon.[59] "Periods and semicolons insulate words from grammatical implications that would otherwise be created by words that precede or follow them . . ."[60] So, based on the plain reading of article X, section 4, the language limiting the homestead exemption to "residence of the owner or owner's family" does not apply to property located outside a municipality.

And, as a historical matter, the Florida Supreme Court has never imposed any such limitation on property located outside a municipality. As the *Davis* court pointed out, the 1868 and 1885 versions of the Florida Constitution limited the homestead exemption for property within a municipality to the "residence and the business house of the owner."[61] Yet, the Florida Supreme Court has consistently declined to extend that limitation to property located outside a municipality.[62]

---

[58] Art. X, § 4(a)(1), Fla. Const.

[59] *Id.*

[60] Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 162 (2012).

[61] 864 So. 2d 458, 459 (Fla. 1st DCA 2003) ("Language similar to that found in article X, section 4 of the current constitution has appeared in Florida constitutions for well over a century.").

[62] *Id.* at 460 ("When interpreting the 1868 and 1885 homestead provisions, the supreme court consistently concluded that the language limiting the homestead to the 'residence and business house of the owner' was inapplicable to homesteads located outside municipalities.") (citing *Buckels v.*

### III.    Conclusion

Nearly 140 years ago, the Florida Supreme Court held that the only thing a landowner had to do to claim property outside a municipality as homestead was to live on the land:

> Our Constitution says: "A homestead to the extent of 160 acres of land * * * owned by the head of a family residing in this State * * and the improvements on the real estate," shall be exempt from levy and sale. This language in our view is too plain for elaboration or argument. We have no authority, if the person who claims the land for a homestead resides thereon, is a resident of the State, the head of a family, and there is no more than 160 acres in the tract, to add any other conditions than those expressed in the Constitution. To say how the homesteader should use his land, whether as a "farm," or for a "saw-mill," or a "grist-mill," or a "carding and fulling mill," would be to impose a judicial condition not found in the Constitution of the State. The Constitution does not prescribe the manner in which the tract shall be used beyond residing thereon.[63]

This Court is not aware of any Florida state court decision—whether by the Florida Supreme Court or by a Florida intermediate appellate court—in the 140 years since hinting that the outcome would be different today.

---

*Tomer*, 78 So.2d 861 (Fla.1955); *Armour & Co. v. Hulvey*, 74 So. 212 (Fla. 1917); *McDougall v. Meginniss*, 21 Fla. 362 (Fla. 1885); *Fort v. Rigdon*, 129 So. 847 (Fla. 1930)).

[63] *McDougall v. Meginniss*, 21 Fla. 362, 373 (Fla. 1885); *Armour & Co. v. Hulvey*, 74 So. 212, 214 (Fla. 1917) (explaining that the Florida Supreme Court has held that, to claim the homestead exemption for rural property, "nothing more was required than for the homesteader to live on the tract to render the whole 160 acres exempt" and that "the Constitution did not prescribe the manner in which the land should be used beyond residing on it").

Because it is undisputed that the Debtor has lived at her property since—at a minimum—2013 and has the intent to reside there permanently, the Debtor is entitled to claim her property as exempt homestead even though she used it for farming operations (and may continue to allow a third party to conduct some farming operations on the property).

Therefore, by separate order, the Court will grant the Debtor's summary judgment motion, overrule the Arnold law firm's objection to the Debtor's claim of exemption, and grant the Debtor's motion to avoid the Arnold law firm's judicial lien. The trial scheduled for May 2, 2022 is canceled.

---

Attorney Michael Ziegler is directed to serve a copy of this Memorandum Opinion on all interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the Memorandum Opinion.

---

**Michael A. Ziegler, Esq.**
**Ziegler Diamond Law: Debt Fighters**
*Counsel for the Debtor*

**Andrew W. Lennox, Esq.**
**Casey Reeder Lennox, Esq.**
**Lennox Law, P.A.**
*Counsel for the Law Offices of Lynwood Arnold, P.A.'*